IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ESTATE OF JACOB WILLIAM FERRELL**, by and through James Eric Ferrell, Administrator, and S.F.,

Plaintiffs,

v.

Case No. 23-2384-DDC

**KB CUSTOM AG SERVICES LLC and KYLE D. BEAUCHAMP**,

Defendants.

### MEMORANDUM AND ORDER

In May 2023, Jacob William Ferrell died because of injuries he sustained in a traffic accident. Mr. Ferrell's vehicle collided with a truck operated by an employee of defendant KB Custom Ag Services LLC. After the accident, plaintiffs—the Estate of Jacob William Ferrell (by and through its administrator) and S.F. (Mr. Ferrell's minor daughter)—filed this wrongful death and survival action against KB Custom and its sole owner, Kyle D. Beauchamp. Doc. 1 at 1–2, 4 (Compl. ¶¶ 5, 6, 24). Plaintiffs asserted various negligence claims against defendants under theories of respondeat superior, direct negligence, negligence per se, and negligent entrustment. Doc. 78 at 11 (Pretrial Order ¶¶ 4.a.i–iv).

Now, the parties have reached a settlement. They filed a Joint Motion Requesting a Hearing for Approval of Minor Settlement, Wrongful Death Settlement, and Apportionment of Settlement Funds (Doc. 109). The court conducted a hearing on the motion on October 20, 2025,

and took the motion under advisement the same day. The court now grants the motion and approves the parties' settlement, for reasons explained below.

I.      **Findings of Fact**

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing, finds as follows:

1. Jacob William Ferrell died as a result of injuries sustained in a motor vehicle accident that occurred in Seward County, Kansas on May 12, 2023. Doc. 78 at 2 (Pretrial Order Stipulations ¶ 2.a.4).

2. Mr. Ferrell was not married at the time of his death but was engaged to LaTristae Torres. *Id.* at 3 (Pretrial Order Stipulations ¶ 2.a.7).

3. Mr. Ferrell's sole heir, S.F., is a minor. *Id.* at 2 (Pretrial Order Stipulations ¶ 2.a.1, 6); Doc. 109 at 1.

4. Ms. Torres is S.F.'s mother and natural guardian. Doc. 78 at 3 (Pretrial Order Stipulations ¶ 2.a.7).

5. On September 3, 2025, the court appointed David Rebein as guardian ad litem for S.F. in these proceedings. Doc. 101.

6. Nationwide Agribusiness Insurance Company insured defendants at the time of the accident under a policy which provided bodily-injury coverage, with a limit of $1 million per incident.

7. Defendants deny any liability for Mr. Ferrell's suffering and death. But plaintiffs and defendants have represented to the court that they wish to settle and compromise plaintiffs' claims against defendants arising out of the accident fully and finally.

8. The parties thus have entered into a Settlement Agreement and Release.

9. Plaintiffs have agreed to settle any and all claims arising out of the accident that they have or may have against defendants for a total of $2,875,000, consisting of the following payments:

   a. $1,000,000 paid by Nationwide to Athene Qualified Assignment Corporation to purchase a structured settlement in accordance with Sections 104a2 and 130 of the Internal Revenue Code, due 14 days after the court issues this Order.

   b. $64,329.51 paid by KB Custom to Athene Qualified Assignment Corporation to purchase a structured settlement in accordance with Sections 104a2 and 130 of the Internal Revenue Code, due 14 days after the court issues this Order.

   c. $20,000 paid by KB Custom to LaTristae Torres to aid in purchasing a vehicle for the benefit of S.F., due 14 days after the court issues this Order.  Ms. Torres will contribute her own funds to the purchase, as well, to account for her personal use of the vehicle.

   d. $915,670.49 paid by KB Custom to the DeVaughn James Client Trust Account, due 14 days after the court issues this Order.

   e. $450,000 paid by KB Custom on or before September 30, 2026, in the following manner:  $270,000 to fund future periodic payments for the benefit of S.F. through an approved life company—determined at the time of funding—and $180,000 made payable to DeVaughn James Injury Lawyers Client Trust Account.

   f. $425,000 paid by KB Custom on or before September 30, 2027, in the following manner:  $255,000 to fund future periodic payments for the benefit of S.F. through an approved life company—determined at the time of

funding—and $170,000 made payable to DeVaughn James Injury Lawyers Client Trust Account.

10. The following chart captures plaintiffs' settlement apportionment request:

| Date of fund distribution: | Payable to: | Amount: |
|---|---|---|
| Within 14 days of this Order | 1) Athene Qualified Assignment Corporation<br><br>2) LaTristae Torres<br><br>3) DeVaughn James Client Trust Account<br><br>4) **Total** | 1) $1,064,329.51<br><br>2) $20,000<br><br>3) $915,670.49<br><br>4) **$2,000,000** |
| On or before September 30, 2026 | 1) Approved life company, determined at time of funding<br><br>2) DeVaughn James Client Trust Account<br><br>3) **Total** | 1) $270,000<br><br>2) $180,000<br><br>3) **$450,000** |
| On or before September 30, 2027 | 1) Approved life company, determined at time of funding<br><br>2) DeVaughn James Client Trust Account<br><br>3) **Total** | 1) $255,000<br><br>2) $170,000<br><br>3) **$425,000** |

After considering the parties' submissions, the testimony given at the settlement hearing, and counsels' insightful comments, the court decides the apportionment of the wrongful death settlement is proper, the settlement is in S.F.'s best interest, and the attorneys' fees are reasonable. The court explains these conclusions, below, starting with the wrongful death settlement apportionment.

4

## II.        Wrongful Death Settlement

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). Plaintiffs assert this action under the Kansas Wrongful Death Act. The Act identifies the court's role in a Kansas wrongful death settlement. Kan. Stat. Ann. § 60-1905. The full text of § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act thus requires the court to apportion the recovery after conducting a hearing. *Id.* It provides that the court should allow costs and reasonable attorneys' fees for plaintiffs' counsel. *Id.* And the Act directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each").

The Kansas Wrongful Death Act allows recovery of damages for the following kinds of loss: "(1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased." Kan. Stat. Ann. § 60-1904 (quotation cleaned up). This statute thus

allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transp., Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action).

Pecuniary damages in a wrongful death action are those that "'can be estimated in and compensated by money.'" *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).  Pecuniary damages "'should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased.'" *Id.* (quoting *McCart*, 641 P.2d at 391).  In Kansas, pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id*.  Kansas law "recognizes no limit on pecuniary damages recoverable in certain personal injury and wrongful death actions." *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 791 (Kan. 2014).

Applying the Kansas Wrongful Death Act, the court begins by evaluating how the parties' settlement agreement apportions the recovery.  Then, before assessing the reasonableness of plaintiffs' attorneys' fees, the court pauses to address Kansas's requirements for a settlement involving a minor child.  After ascertaining that the settlement is in S.F.'s best interests, the court returns to the question of attorneys' fees.

Here, all but one of the agreement's terms clearly apportions all recovery to S.F., the decedent's sole heir, for pecuniary damages including her loss of "parental care . . . and financial support." *Turman*, 125 F. Supp. 2d at 453.  The agreement contemplates the purchase of a structured settlement from Athene Qualified Assignment Corporation for S.F.'s benefit.  The structured settlement would provide monthly payments for S.F. of $1,500 until the age of 25 and just over $6,500 from ages 25–45.  It also would provide a semi-annual college fund from ages 18–24, totaling $480,000, and lump sum payments, increasing in value every five years from

ages 25–45.  The cost of the structured settlement is a little over $1 million, with a guaranteed payout around $4.2 million.  In addition to the structured settlement, the agreement also will fund periodic payments for S.F., starting in September 2026.  These terms appropriately benefit S.F. as the only heir who sustained a loss from Mr. Ferrell's death.  *See* Kan. Stat. Ann. § 60-1905.

One of the agreement's other terms, however, arguably apportions a part of the recovery to a non-heir, giving the court some pause.  The agreement provides that defendants will pay $20,000 to Ms. Torres for the purchase of a new vehicle.  As the court noted earlier, the Kansas Wrongful Death Act requires that a settlement distribute the recovery "in proportion to the loss sustained by each of the heirs[.]"  *Id.*  And while a "decedent's surviving spouse . . . qualifies as an heir-at-law and has standing to bring a wrongful death lawsuit[,]" a fiancé does not. *Heimerman v. Rose*, No. 13-2480-CM, 2014 WL 2711904, at *2 (D. Kan. June 16, 2014); *see also DeWitt ex rel. Kemper v. Frenchie's Custom Helmets*, No. 93-2332-JWL, 1994 WL 171571, at *2 (D. Kan. Apr. 1, 1994) ("The Kansas Supreme Court has construed the term 'heirs at law' [in the Kansas Wrongful Death Act] to be synonymous with the term 'heirs' as construed under the intestate succession laws.  Under the Kansas intestate succession laws, if a decedent leaves children and no spouse, all his property passes to his children as heirs." (quotation cleaned up)). Moreover, recovery in a "wrongful death action . . . is for the *exclusive* benefit of the heirs[.]" *Mason v. Gerin Corp.*, 647 P.2d 1340, 1343 (Kan. 1982) (emphasis added).  So, the court wondered how allocating $20,000 to Ms. Torres—Mr. Ferrell's fiancé and S.F.'s mother, but not Mr. Ferrell's spouse—qualified as an appropriate apportionment under the Act.

At the hearing, Ms. Torres testified that she also will contribute to the vehicle's purchase out of her own pocket.  And Mr. Rebein, guardian ad litem, added that Ms. Torres also contemplated trading in her current vehicle to offset the cost further.  So, testimony at the

7

hearing clarified that the $20,000 settlement payment represents just the portion of the car purchase that will benefit S.F.  Ms. Torres herself will fund the portion of the new vehicle that benefits her as a non-heir.  Finally, the estate's administrator—who is also S.F.'s grandfather—testified about S.F.'s need to travel in a reliable vehicle, a need heightened by the geography in western Kansas where S.F. and family reside.  The court concludes that the $20,000 allocated to Ms. Torres qualifies, at bottom, as a benefit to S.F.

The court thus approves the settlement's apportionment as appropriate under the Kansas Wrongful Death Act.  Because S.F. is a minor, however, the court also must ensure that this appropriate apportionment is in S.F.'s best interest, an issue the court takes up, next.

### III.     Minor Settlement

Kansas law treats minors "as persons under legal disability[.]" *In re Est. of Wise*, 890 P.2d 744, 749 (Kan. Ct. App. 1995).  And so, a court must approve a settlement contract before it can bind a minor plaintiff.  *Childs ex rel. Harvey v. Williams*, 757 P.2d 302, 303 (Kan. 1988).  Kansas law requires courts "to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a 'friendly' hearing." *White ex rel. White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001).  Courts "'may not simply rely on the fact that the minor's parents have consented to the proposed agreement.  Instead, the court must determine whether the agreement is in the minor's best interests.'"  *Id.* (quoting *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 205 (Kan. Ct. App. 1999)).  Indeed, Kansas cases have quoted favorably the Alabama Supreme Court's view that a court should approve an agreement, not because the parties agree, but "'because it appears from the evidence that the amount is just and fair'" and "'conservative of the minor's interests.'"  *Mo. Pac. Ry. Co. v. Lasca*, 99 P. 616, 618 (Kan. 1909) (quoting *Tenn. Coal, Iron & R.R. Co. v. Hayes*, 12 So. 98, 103 (Ala. 1892)).

Here, the parties' agreement purchases a structured settlement that not only provides a monthly stipend for S.F. but also accounts for significant—and expensive—life events in her future. For example, the structured settlement includes a college fund paid out over six years, starting when S.F. turns 18. It also provides increasingly large lump sum payments, starting at age 25, that could help S.F. pay for her wedding or her first home. The forward-looking nature of the structured settlement serves S.F.'s long-term interest. What's more, Mr. Rebein, S.F.'s guardian ad litem, characterized the agreement as "extraordinary" for S.F. He noted that plaintiffs' counsel had a sizable constraint to contend with: defendants' insurance policy had capped any recovery at $1 million. To recover beyond that cap, plaintiffs' counsel pursued—and secured—a personal guarantee for the settlement funds that exceeded the insurance payout. According to Mr. Rebein, securing this result required excellent lawyering. And this result worked in S.F.'s best interest, permitting a total recovery more than double that provided by the insurance funds alone. Mr. Rebein is an experienced trial lawyer and he's especially experienced in truck accidents (and accidents involving other vehicles) causing death or catastrophic injury. Also, he knows the territory. He's practiced in southwest Kansas cases and courts for most of his career. His evaluation is meaningful to the court's assignment. In sum, the court concludes that S.F.'s claims weren't "sold short by [the] agreed settlement[.]" *White*, 31 P.3d at 330. And it approves the minor settlement.

With that conclusion, one final item of business remains for the court. Under the Kansas Wrongful Death Act, the court must approve as reasonable the awarded attorneys' fees. *See* Kan. Stat. Ann. § 60-1905. And, though not explicitly required, a minor settlement approval also contemplates reasonable attorneys' fees because the settlement amount must prove "just and

9

fair" and "conservative of the minor's interests." *Mo. Pac.*, 99 P. at 618 (quotation cleaned up). The court turns to this final task, below.

IV.     **Attorneys' Fees**

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court addresses the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

KRPC 1.5(a).

Plaintiffs' counsel here seeks an award of attorneys' fees representing 40% of the recovery, after deducting expenses. In the representation contract reached between plaintiffs and plaintiffs' counsel, plaintiffs agreed to attorneys' fees at this rate. And at the hearing, plaintiffs' counsel and Mr. Rebein described the work conducted to reach the settlement, providing support for the fee award.

The first KRPC 1.5(a) factor includes three prongs: "the time and labor required," "the novelty and difficulty of the questions involved," and "the skill requisite to perform the legal service properly[.]" *Id.* Addressing the time and labor required first, the court notes that

10

plaintiffs' counsel didn't produce billing records.  The court is mindful that a segment of the practicing trial bar accepts representations on a contingent-fee basis.  There is nothing nefarious about this business model or those who choose to organize their attorney-client relationship under it.  Indeed, it permits litigants who might lack the capacity to purchase representation on a cash basis to secure it.  But still, the Kansas Supreme Court has decided that the "time and labor required" for the job affects the reasonableness of an attorneys' fee.  *Baugh*, 973 P.2d at 207 (adopting KRPC 1.5(a)'s standards in context of Kan. Stat. Ann. § 60-1905).  So, the absence of any timekeeping records hinders the court's ability to apply this factor to this case.  Plaintiffs' counsel is the market participant who elected not to keep time records.  The court thus assigns responsibility for that decision to counsel, not plaintiffs themselves.

Counteracting the timekeeping records' absence, Mr. Rebein testified at the hearing about counsel's tireless efforts on plaintiffs' behalf.  He testified that counsel worked "night and day" to close the gap between the parties' negotiating positions to consummate a settlement agreement.  And, as previously discussed, he identified considerable hurdles—*e.g.*, the limited insurance payout—that counsel overcame in reaching the current agreement.  The court interprets this testimony to speak to the time and labor required, as well as to the second prong—the difficulty of this case.

At the hearing, plaintiffs' counsel also outlined the experts it had retained in pursuit of plaintiffs' claims:  an accident reconstructionist, a pathologist, a cell phone expert, a trucking/driving expert, an economist, and a toxicologist.  Counsel's efforts to retain these experts also bears on the first KRPC 1.5(a) factor.  To be sure, the sheer number of experts retained doesn't necessarily demonstrate a case's difficulty or manifest an attorney's labor or skill.  But here the court concludes counsel's efforts in retaining experts demonstrates all three:

difficulty, labor, and skill. That's so because, at the hearing, plaintiffs' counsel described the purpose of each expert given the facts and challenges of this case. His brief overview of the legal strategy employed when retaining each expert suggests that counsel devoted a considerable amount of time and labor. It also reveals the difficult twists in the case and, thus, the requisite skill to achieve a successful result. So, while the absence of billing records disfavors a finding of reasonableness, the testimony at the hearing tempers that disfavor, tipping the scales in the opposite direction. Other KRPC 1.5(a) factors favor a finding of reasonableness, as well.

For example, the fourth factor directs the court to assess the "amount involved and the results" achieved. *Id.* The settlement amount is, in Mr. Rebein's assessment, "extraordinary." And his testimony largely credited counsel's aptitude for the results achieved. Apart from overcoming the limited-insurance-payout difficulty already discussed, Mr. Rebein also testified that counsel negotiated to reduce an outstanding ERISA lien by $30,000—further enhancing the recovery available to his clients. The total settlement amount ($2.875 million) and the ERISA negotiation also shed light on the seventh KRPC 1.5(a) factor, the "experience, reputation, and ability of the lawyer or lawyers performing the services[.]" *Id.* Such favorable results suggest a lawyer with notable ability and, likely, considerable experience and reputation.

The court also finds that "the fee customarily charged in this locality for similar services" (the third factor) and "whether the fee is fixed or contingent" (the eighth factor) likewise favor approving counsel's fee request. *Id.* Plaintiffs' counsel accepted this engagement with the risks inherent in a contingent-fee arrangement. It was possible that counsel would invest time and capital into the case and recover no fee. Indeed, counsel clarified at the hearing that the law firm had fronted the cost for all six experts—along with other expenses—totaling close to $100,000. The court's experience with similar cases reveals that a 40% fee arrangement, though on the high

end of fees for settling cases, is a fee sometimes charged in this locality. Indeed, this court has approved 40% contingency fee arrangements before. *See, e.g.*, *Aiken v. Assurance Health Sys. LLC*, No. 22-2385-DDC-ADM, 2025 WL 1810014, at *5 (D. Kan. July 1, 2025) (approving 40% contingency fee as aligning with those charged in the area); *Sedlock v. Overland Park Med. Invs., LLC*, No. 19-2614-DDC, 2021 WL 1056516 at *4–5 (D. Kan. Mar. 19, 2021) (finding that a 40% contingency fee award was reasonable given the circumstances). The court thus concludes the 40% attorneys' fee award contemplated by plaintiffs' contingency-fee agreement is reasonable in this case.

The remaining KRPC 1.5(a) factors—the second, fifth, and sixth—are neutral here. Nothing indicates that accepting this case would preclude other employment by plaintiffs' counsel (second factor). Relatedly, nothing suggests that the clients imposed on counsel any extraordinary time limitations (fifth factor). On the "nature and length of the professional relationship with the client"—the sixth factor—counsel put forth nothing indicating a prior relationship with plaintiffs. So, nothing implies that counsel should receive a premium fee or absorb a discounted one because of a long-standing relationship with the clients. These three factors are neutral here.

In sum, one KRPC 1.5(a) factor tips slightly against approval for reasonable fees, four favor approval, and the remaining three are neutral. The court thus finds that counsel's fee request here is a reasonable one and approves it.

**V.     Conclusion**

The court concludes that the apportionment of the wrongful death settlement is appropriate under the Kansas Wrongful Death Act. It also decides that the settlement is in the best interests of the minor heir, S.F. And it approves plaintiffs' attorneys' fees as reasonable.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs Estate of Jacob William Ferrell, by and through James Eric Ferrell, Administrator, and S.F. and defendants KB Custom Ag Services LLC and Kyle D. Beauchamp's Joint Motion Requesting a Hearing for Approval of a Minor Settlement, Wrongful Death Settlement, and Apportionment of the Settlement Funds (Doc. 109) is granted.

**IT IS SO ORDERED.**

**Dated this 30th day of October, 2025, at Kansas City, Kansas.**

                                                    <u>s/ Daniel D. Crabtree</u>
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**